UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE A. LONG,<br><br>              Plaintiff,<br><br>     v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>              Defendant. | No.  2:19-cv-00334 AC<br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

////

////

////

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); <u>Bowen v. City of New York</u>, 476 U.S. 467, 470 (1986).

1

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on August 21, 2015. Administrative Record ("AR") 186-92.[2] The disability onset date was alleged to be August 21, 2015. Id. The application was disapproved initially and on reconsideration. AR 114-28. On August 18, 2014, ALJ Christopher C. Knowdell presided over the hearing on plaintiff's challenge to the disapprovals. AR 34-83 (transcript). Plaintiff, who appeared with her counsel Jesse Kaplan, was present at the hearing. AR 34. James Graham, a Vocational Expert ("VE"), also testified at the hearing. Id.

On January 22, 2018, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 15-28 (decision), 29-33 (exhibit list). On January 2, 2019, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision and additional exhibit list).

Plaintiff filed this action on February 25, 2019. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 4, 10. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 13 (plaintiff's summary judgment motion), 21 (Commissioner's summary judgment motion), 27 (plaintiff's reply). Additionally, before the court is plaintiff's motion to file an 11-page reply brief, which will be granted, and the filed reply has been considered. ECF No. 26.

## II. FACTUAL BACKGROUND

Plaintiff was born in 1969, and accordingly was, at age 46, a younger person under the regulations, when he filed his application.[3] AR 27. Plaintiff has at least a high school education, and can communicate in English. Id.

////

////

////

---

[2] The AR is electronically filed at ECF Nos. 5-3 to 5-27 (AR 1 to AR 1515).
[3] See 20 C.F.R. § 404.1563(c) ("younger person").

### III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

4

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2020.
>
> 2. [Step 1] The claimant did not engage in substantial gainful activity since August 20, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: diabetes, hypertension, migraine/headaches, obesity, major depressive disorder, panic disorder, and anxiety disorder (20 CFR 404.1520(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except capable of occasional superficial interactions with coworkers and supervisors; limited to simple repetitive tasks; can adapt to occasional workplace changes; and should have no interactions with the public.
>
> 6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. [Step 5] The claimant was born [in 1969] and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are job that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 20, 2015, through the date of this decision (20 CFR 404.1520(g)).

AR 17-28.

As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 28.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to give specific and legitimate reasons for rejecting plaintiff's treating psychiatrist Dr. Brad Briercheck; (2) failing to give specific and legitimate reasons for rejecting consultative examiner Dr. Carol Chambers; (3) using non-specific, illegitimate reasons to exalt a non-examining physician; (4) failing to give clear and convincing reasons for rejecting plaintiff's subjective testimony; and (5) improperly treating LCSW Janet Rittenhouse as a third party rather than a medical "other source." ECF No. 13 at 8-17.

    A. <u>The ALJ's Rejection of the Treating Psychiatrist's Opinion</u>

        a. <u>The Medical Opinion Evidence</u>

The medical opinion evidence consists of reports from state agency non-examining physicians N. Nasrabadi, M.D. and M. Acinas, M.D., state agency non-examining psychologist P. Hightower, Psy.D., consultative examiner Parimal Shah, M.D., state agency non-examining psychologist J. Foster-Valdez, Ph.D., consultative psychologist Carol Chambers, Psy.D., and treating psychiatrist Brad Briercheck, M.D. See AR 19-22.

////

6

In August 2015 plaintiff presented for an in-person visit with his therapist, Janet Rittenhouse, L.C.S.W., at Kaiser for follow-up on his depression and anxiety symptoms. AR 809. He reported improvement in symptoms and stated he had visited his parents in Texas and spoke at a meeting in Washington D.C.[4] AR 810. Ms. Rittenhouse reported a normal mental status examination. Id. On September 10, 2015, plaintiff saw Jason Trummer, D.O. via telephone visit., complaining of shortness of breath and migraines. AR 1070. Regarding the shortness of breath, plaintiff said it was only an intermittent issue and feels like he has something stuck in his throat. AR 1071. He denied gastroesophageal reflux disease ("GERD") signs and symptoms. Id. Dr. Trummer noted that plaintiff's pulmonary function test ("PFT") the previous year was normal. Id. Plaintiff reported that his blood sugars were getting too low and he was getting headaches. Id. Dr. Trummer discontinued Glipizide, one of Plaintiff's diabetes medications, and advised Plaintiff to return if his symptoms did not improve. Id.

In September of 2015 plaintiff attended a session with Vicki Tinsley, R.D. for diet and nutrition treatment for obesity/overweight. AR 1078. He reported that he used to get up in the middle of the night to eat, stopped that behavior and manages stress differently. AR 1081. On September 27, 2015, plaintiff's visited psychiatrist Bradley Briercheck, M.D., who diagnosed him with major depressive disorder, recurrent episode, severe, and prescribed Trazodone to aid sleep. AR 812. There are no detailed notes from this visit, however, plaintiff saw Dr. Briercheck before his alleged onset date, four times between January of 2014 and May of 2015. AR 789-90. A note from March of 2014 states that plaintiff is "finally experiencing some relief now that he is considering medical retirement" and that they "spent time discussing what may be an appropriate work situation for him now that he is separating from the states." Id. The final note from May 5, 2015 states that plaintiff had medically retired and intended to apply for social security disability. AR 789.

Following the September 2015 visit with Dr. Briercheck, plaintiff contacted Ms. Rittenhouse for a pre-arranged phone visit and complained of feeling more anxious, and was able

---

[4] At the administrative hearing, plaintiff said "I don't know what they would be talking about" when asked about the conference and disputed having attended such an event. AR 73.

to determine that the increase in anxiety was caused by thinking about his last job experience and associated feelings of unjustness. AR 813. Ms. Rittenhouse used cognitive behavioral therapy ("CBT") to help him manage his symptoms and reported that by the end of the call he was laughing and felt he had specific tools to use. Id. They arranged for a follow-up appointment by phone because of plaintiff's plans to return to Texas. Id. Ms. Rittenhouse documented Plaintiff's major depressive disorder was in partial remission. Id.

In October 2015, state agency medical and psychological consultants reviewed the medical evidence to evaluate plaintiff's Social Security claim. AR 89-91. Physician A. Nasrabadi, M.D., concluded that plaintiff's alleged physical impairments were non-severe. AR 89-90. Psychiatrist Pauline Hightower, Psy.D., noted that plaintiff's previous psychiatric issues from years earlier seemed largely related to his work environment and supervisor. AR 91. Since his retirement, his mental health appeared to have improved and current findings seemed unimpaired. Id. Dr. Hightower concluded that plaintiff had no more than mild limitation in any area of function and his alleged mental impairments were non-severe. AR 91-92.

On October 26, 2015, plaintiff attended his scheduled follow up phone appointment with Ms. Rittenhouse. AR 1115. Ms. Rittenhouse reported that plaintiff was pleasant, continued to use his coping strategies, and was taking care of his activities of daily living. Id. Ms. Rittenhouse adjusted plaintiff's diagnoses to major depressive disorder, recurrent episode, mild. Id. On November 25, 2015, plaintiff has a phone appointment with Dr. Trummer for complaints of headaches and reported taking 18 Imitrex over 2-3 weeks, but no blood pressure medications, and a 20-30-pound weight loss. AR 1097. Dr. Trummer refilled his prescription early, but explained the risk of stroke with medications, and recommended a low salt diet, and that plaintiff continue to work out, and lose weight. Id.

On December 14, 2015, plaintiff contacted Ms. Rittenhouse for his scheduled follow-up appointment while he was in Texas with his parents, reporting an increase in symptoms and frequent migraines, and was also adjusting to braces on his teeth. AR 1122. Overall, he reported feeling better than he had in the past and Ms. Rittenhouse noted plaintiff's depression returned to partial remission. Id. That same month, plaintiff reported to Dr. Trummer that he had high blood

pressure, but his diabetes was doing well on medication and his sugars were "good." AR 1229. On examination, plaintiff was well-appearing, alert and oriented, his respiratory and cardiovascular systems were normal, and his oxygen saturation was at 99%. AR 1229-30. Plaintiff denied any diabetic complications. AR 1231. Dr. Trummer continued current medications and added hypertension medication. AR 1228. In February 2016, plaintiff had a negative screening for diabetic retinopathy. AR 1235. At a routine screening with Dr. Trummer that month, plaintiff reported high blood pressure, but no symptoms. AR 1259. On examination, Dr. Trummer again noted Plaintiff was well-appearing, alert and oriented, and his oxygen level was at 98%. AR 1260. His medications were adjusted to add magnesium and chlorthalidone (a water pill). AR 1258-59, 1268. Dr. Trummer noted that plaintiff gave him a hug that was "very uncomfortable." AR 1268.

On February 18, 2016, Carol Chambers, Psy.D., performed a comprehensive mental status evaluation at the request of the Department of Social Services. AR 1146. Dr. Chambers' record review included plaintiff's discharge order from Heritage Oaks Hospital, dated December 27, 2013 (20 months before plaintiff's alleged disability onset date). Id. Dr. Chambers noted that Plaintiff drove himself to the appointment and arrived on time, he was appropriately and casually dressed, and had good grooming. AR 1146. Notes reflect that plaintiff presented in a friendly manner, made good eye contact, interacted appropriately with the evaluator, had normal facial expression, and normal gross motor function. AR 1146. He carried an oxygen cylinder and was breathing part of the time through the mask. AR 1146. Dr. Chambers found plaintiff to be "a questionable historian" and it was her impression that plaintiff's symptoms were "real, but there is some exaggeration of the severity" and "a personality disorder [] may be playing a role in this." AR 1146.

During his visit with Dr. Chambers, plaintiff's chief complaints were symptoms of depression and anxiety with panic attacks. AR 1146. Plaintiff reported attending monthly counseling, which he found somewhat helpful, and was prescribed Trazodone and Wellbutrin. Id. Plaintiff reported that his symptoms affect his daily living because he cannot go out of the house very much, goes to the grocery store when no one is there, and gets nervous around people, but he

9

is independent in basic activities of daily living and does not need help preparing meals, was able to manage funds independently and appropriately, and was able to make change at the store. AR 1147-48. On examination, plaintiff was alert and fully oriented, had intact intelligence, good attention and concentration, adequate fund of knowledge and memory, and intact judgment. AR 1148-49. Dr. Chambers opined that plaintiff was not significantly limited in performing either simple and repetitive tasks or detailed and complex tasks, was moderately limited in his ability to perform work activities on a consistent basis or without special or additional supervision, and was markedly limited in his ability to maintain regular attendance, complete a normal workday or workweek, accept instructions from supervisors, interact with coworkers and the public, and deal with usual stresses encountered in a competitive work environment. AR 1149-50.

March 3, 2016, Parimal Shah, M.D., performed a comprehensive internal medicine evaluation and reviewed available medical records. AR 1151. Dr. Shah noted plaintiff complained of mostly mental health conditions and "did not convincingly provide physical/functionally limiting conditions" during the evaluation. Id. Dr. Shah noted that the "[c]urrent diagnosis is 'unclear, malingering?'" AR 1152. On examination, Dr. Shah found plaintiff "demonstrated voluntary restriction/moderate exaggeration during this evaluation and/or refused certain critical ROM [range of motion]" testing. AR 1153. Accordingly, Dr. Shah evaluated plaintiff's range of motion based on passive range of motion (where the physician moves the joint with no effort from the patient) and informal observation, and noted that the need for an oxygen tank was questionable and required further support from medical providers. AR 1157. Dr. Shah documented that plaintiff "appeared to manipulate and malinger." AR 1153.

Dr. Shah reported that plaintiff exhibited no dyspnea (shortness of breath) on exertion and examination of his chest and lungs were normal, and the musculoskeletal exam revealed no swelling or deformity of the upper or lower extremities and normal range of motion throughout. AR 1154-55. Similarly, examination of the spine showed no evidence of muscle spasms or tenderness, and normal range of motion, straight-leg testing was negative, hands and feet were normal with no evident restriction, and plaintiff exhibited normal muscle tone and bulk, 5/5 strength in all extremities, normal gait, and no difficulty with squatting and rising. AR 1155-56.

Dr. Shah diagnosed no actual medical/physically limiting condition and found there was a strong possibility of manipulation or malingering, but still limited plaintiff to the equivalent of medium exertion work, finding could lift and carry 25 lbs. frequently and 50 lbs. infrequently; push and pull without limitation with upper and lower extremities; sit, stand, and walk 8 hours in an 8-hour workday; ambulate without an assistive device; perform postural activities 7 hours in an 8-hour workday; balance without restriction; had no manipulative, visual, or communicative limitations; and should avoid fumes, odors, dust, gasses, and poor ventilation. AR 1157-58.

In March 2016, plaintiff visited Dr. Trummer with complaints of headache, and they had a "[l]ong discussion with plaintiff about sleep, diet, and exercise." AR 1288. Dr. Trummer noted that headaches likely from plaintiff's GERD medication Protonix, discontinued that medication. Id. Dr. Trummer also noted the headaches were chronic, that plaintiff used oxygen treatment, and plaintiff had no obstructive sleep apnea. AR 1289. Plaintiff was alert and oriented, and had normal mood, behavior, speech, dress, motor activity, and thought processes. AR 1290. On May 9, 2016, Dr. Trummer declined to sign off on plaintiff's request for loan forgiveness, explaining "I know that you could find another job and do well at it – even if it was at home or your own company. I don't feel that you have a significant barrier to prevent you from some form of employment." AR 1304.

On March 11, 2016, state agency mental consultant Jaine Foster-Valdez, Ph.D., reviewed the updated medical record and noted that various clinicians had questioned plaintiff's credibility regarding the severity of his psychiatric issues. AR 106. Dr. Foster-Valdez observed that Plaintiff was clearly preoccupied with his situation, but he was also highly educated, lived independently, was articulate, and got along with others well enough to fly across country, interact with treatment professionals, shop for necessities, and employ service professionals to maintain his house and yard. Id. Dr. Foster-Valdez opined that plaintiff had some moderate social limitations and would do well with superficial social interactions, otherwise he had no significant limitation in any other area of function. AR 108-09. On April 6, 2016, state agency physician M. Acinas, M.D., independently reviewed the updated record and agreed with Dr. Nasrabadi's assessment that Plaintiff's physical conditions were non-severe. AR 104.

On July 11, 2017, over two years after Dr. Briercheck last performed a recorded mental status examination (see AR 793 (reflecting a May 5, 2015 evaluation)), the doctor completed a Mental Impairment Questionnaire at Plaintiff's request. AR 1203-08. Dr. Briercheck diagnosed major depressive disorder ("MDD") recurrent, in partial remission. AR 1203. Despite the partial remission diagnosis, Dr. Briercheck checked boxes to indicate plaintiff had poor memory; disturbances in appetite, mood, and sleep; emotional lability; social withdrawal; decreased energy; recurrent panic attacks; anhedonia; psychomotor retardation; feelings of guilt/worthlessness; difficulty thinking or concentrating; intrusive recollections of a traumatic experience; persistent irrational fears; generalized persistent anxiety; somatization; and irritability. AR 1203-04. Dr. Briercheck also noted plaintiff had migraines, nightmares, difficulty controlling his blood sugar, difficult to control irritable bowel syndrome ("IBS"), fatigue, chronic back pain, and neuropathy in his feet. AR 1204. Plaintiff's medications included Wellbutrin, Prazosine, and Trazodone. AR 1205. Dr. Briercheck checked boxes to indicate plaintiff would miss work more than three times a month, would have fair to poor or no ability to perform unskilled work, and poor or no ability to interact with the public, maintain socially appropriate behavior, travel in an unfamiliar place, or use public transportation. AR 1206-07. Dr. Briercheck also indicated that plaintiff had marked restriction of activities of daily living, maintaining social functioning, constant deficiencies in concentration, persistence or pace; and repeated (i.e. three or more) episodes of deterioration or decompensation. AR 1208.

    b. <u>Principals Governing the ALJ's Consideration of Medical Evidence</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995), <u>as amended</u> (Apr. 9, 1996) (9th Cir. 1996). "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155,

1    1164 (9th Cir. 2008) (internal citations omitted).

2        "The general rule is that conflicts in the evidence are to be resolved by the Secretary and
3    that his determination must be upheld when the evidence is susceptible to one or more rational
4    interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  However, when the ALJ
5    resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting
6    opinion of another physician (including another examining physician), he must give "specific and
7    legitimate reasons" for doing so.  Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294,
8    1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining
9    doctor can be rejected only for specific and legitimate reasons that are supported by substantial
10   evidence in the record.").

11                    c.   The ALJ Did Not Err in Giving Little Weight to Dr. Briercheck

12       The ALJ properly gave little weight to treating psychologist Dr. Briercheck's medical
13   opinion because (1) it was unsupported by his own records, (2) it was unsupported by the medical
14   record as a whole, (3) the opinion was based on subjective complaints, and (4) the opinion was
15   not consistent with plaintiff's activities of daily living.  AR 22.  First, the lack of supporting
16   treatment records, both from Dr. Briercheck and the Kaiser record in general, is an undeniable
17   problem.  The record shows that the last mental status examination Dr. Briercheck performed was
18   in May 2015, three months before the alleged onset date.  AR 793.  Thereafter, Dr. Briercheck
19   provided only medication management and documented no clinical findings.  AR 804 (Jul. 2015),
20   1110 (Sept. 2015), 1278 (May 2016), 1307 (June 2016).  Plaintiff admits as much, noting "[t]here
21   may be a valid criticism of the general quality of Kaiser's medical record-keeping here, at least
22   from the perspective of Social Security ALJs, including that Dr. Briercheck's name mostly
23   appears in conjunction with Mr. Long's psychotropic medications." ECF No. 13 at 9.  Neither
24   the ALJ nor the Court can control Kaiser's record keeping; the lack of supporting records is a
25   legitimate reason for the ALJ to discount a medical source opinion.  See also AR 25 (listing some
26   of Plaintiff's normal mental status examinations)). 20 C.F.R. § 404.1527(c)(4) ("Generally, the
27   more consistent an opinion is with the record as a whole, the more weight we will give to that
28   opinion"); Nino v. Colvin, No. 1:13-CV-832 GSA, 2015 WL 3756889, at *5 (E.D. Cal. June 16,

2015) (unpub.) ("District courts have held that an ALJ's conclusion, supported by substantial evidence in the record, that a claimant's symptoms improved and stabilized with treatment counts as a specific and legitimate reason to discount a doctor's opinion."). The ALJ's first and second reasons for discounting Dr. Briercheck's opinion are properly specific and legitimate, and there is no error here.

### B. The ALJ's Evaluation of Dr. Chambers' Opinion

The undersigned does not find error in the ALJ's treatment of Dr. Chambers' medical opinion. Dr. Chambers, a consulting examiner, opined that plaintiff was not significantly limited in performing either simple and repetitive tasks or detailed and complex tasks, was moderately limited in his ability to perform work activities on a consistent basis or without special or additional supervision, and was markedly limited in his ability to maintain regular attendance, complete a normal workday or workweek, accept instructions from supervisors, interact with coworkers and the public, and deal with usual stresses encountered in a competitive work environment. AR 1149-50. The ALJ gave some weight to the opinion that plaintiff was not significantly limited in performing simple and repetitive tasks and detailed and complex tasks, finding them supported by the Kaiser mental health records. AR 21. The ALJ gave little weigh to Dr. Chambers' assessment of marked limitations as "based solely on the claimant's subjective complaints and inconsistent [sic] and contradicts [sic] the overall Kaiser mental health records that further documents [sic] the stabilizing and improvement of the claimant's mental health symptoms with mental health treatments [sic], therapy sessions and psychotropic medications; and the claimant's mental status examinations were within normal limits [again citing the same pages of the record, including those with the normal physical exam MSEs]." AR 21-22.

As with Dr. Briercheck, the undersigned finds that the ALJ properly cited lack of support in the medical records as a specific and legitimate reason for partially discrediting Dr. Chambers' findings. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995), as amended (Oct. 23, 1995) (ALJ may reject the testimony of an examining, but non-treating physician, in favor of a non-examining, non-treating physician with specific, legitimate reasons for doing so); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) ("The ALJ can meet this burden by setting out a

detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."). Here, the ALJ combed through the overall Kaiser mental health records to support his conclusion. The ALJ noted that from the alleged onset date records indicate that since the alleged onset date, plaintiff's treatment has been minimal had he has been stable, with regular visits to his LCSW and psychotropic medication. AR 25. The record supports the ALJ's conclusion (AR 809-10 ("symptoms have been improved"), 813 (cognitive behavioral therapy helped him manage his symptoms, depression in partial remission), 1122 (depression in partial remission)). 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); Nino, 2015 WL 3756889, at *5 ("District courts have held that an ALJ's conclusion, supported by substantial evidence in the record, that a claimant's symptoms improved and stabilized with treatment counts as a specific and legitimate reason to discount a doctor's opinion."). The ALJ properly weighed Dr. Chambers' opinion, and there is no error here.

### C. The ALJ Did Not Err in Giving Great Weight to Agency Physician Dr. Foster-Valdez

Upon review of the ALJ's opinion and the record, the court concludes that the ALJ did not err in giving great weight to the opinion of non-examining physician Dr. Foster-Valdez. See 20 C.F.R. § 404.1527; Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996), as amended (Aug. 12, 1996) (ALJ may reject treating physician's opinion and rely primarily on findings of a medical consultant, as findings of a nonexamining physician can amount to substantial evidence if supported by other evidence in the record); Wilson v. Comm'r of Soc. Sec., 622 F. App'x 655 (9th Cir. 2015) (unpub.) (ALJ properly "gave greater weight" to the State agency reviewing physician and provided "specific and legitimate reasons, supported by substantial evidence" for rejecting examining doctor's contrary opinion regarding claimant's mental functioning where claimant "had a normal attention span, intact memory, and ability to do simple calculations" and claimant's "reported activities, including taking care of her own personal hygiene without assistance, watching television, and shopping with her spouse").

Here, Dr. Foster-Valdez independently reviewed plaintiff's treatment records and Dr. Chambers' consultative report. AR 105-06. Dr. Foster-Valdez noted that plaintiff had a history

of mental health treatment with "issues largely related to work environment and supervisor" and that it "appears mental health [is] improving since retirement" in 2014. AR 105. Dr. Foster-Valdez's conclusions are consistent with the medical record from Kaiser, as discussed above, and with notes from plaintiff's LCSW (AR 105-06). The ALJ did not err in relying on the opinion of Dr. Foster-Valdez, who had the benefit of reviewing the full medical record, and whose opinion was consistent with those treatment records. See Saelee, 94 F.3d at 522 (findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings).

### D. The ALJ Did Not Improperly Reject Plaintiff's Subjective Testimony

The ALJ id no err in rejecting plaintiff's subjective testimony. The ALJ provided multiple reasons for assigning plaintiff's subjective complaints little credibility, including (1) multiple clinicians found plaintiff exaggerated his symptoms and he gave poor effort during consultative examination, (2) his allegations were inconsistent with the objective medical evidence, (3) he sought minimal, sporadic treatment for his conditions, (4) he was prescribed only conservative treatment during the relevant period, (5) treatment was effective in improving his physical and mental symptoms, (6) his activities of daily living indicated greater functioning than he alleged, and (7) the majority of the medical opinion evidence contradicted plaintiff's claims of greater limitation. AR 20-25. See 20 C.F.R. § 404.1529.

Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. Id. (internal citations omitted). Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." Id. (internal citations omitted).

The ALJ provides multiple legally sufficient reasons for discounting plaintiff's subjective testimony. The ALJ may properly discredit plaintiff on the basis that multiple clinicians found him to have exaggerated his symptoms and that he gave poor effort during the internal medicine evaluation by Dr. Shah. AR 20-21. See Sherman v. Colvin, 582 F. App'x 745, 748 (9th Cir. 2014) (unpub.) (ALJ properly determined that claimant's "testimony conflicted with the residual functional capacity assessment" where the ALJ relied on physicians' observations that claimant exhibited "self-limiting behaviors," had "poor credibility," "refused to do many of the exam maneuvers, "used less than actual effort," was "evasive," and failed to give "valid effort"); Thomas, 278 F.3d at 959 (ALJ properly discounted claimant's testimony where claimant "failed to give maximum or consistent effort during two physical capacity evaluations"); Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (ALJ's adverse evaluation of claimant's testimony "was supported by the observations of many of the providers" who evaluated claimant and observed that claimant "appeared not to exert adequate effort during testing").

Second, the ALJ considered that the objective medical evidence did not support plaintiff's allegations. AR 20-25. 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms" and their impact on your ability to work). Here, the ALJ noted that plaintiff's physical and mental status examinations were generally normal. AR 20-25. As discussed above, the medical record is discussed in detail in the ALJ's opinion, and an independent review reveals that despite its voluminous nature the record is scant in supportive evidence for the severity of impairment plaintiff testifies to. The ALJ gave sufficient rationale for rejecting plaintiff's subjective testimony.

### E. The ALJ Reasonably Discounted Lay Witness Testimony

The ALJ provided "germane" reasons for giving less weight to the lay witness statements from plaintiff's therapist, Ms. Rittenhouse, and plaintiff's mother. AR 25-26, 357-65, 468. Plaintiff is correct that the ALJ did not recognize Ms. Rittenhouse properly as an "other source" opinion rather than a general layperson opinion, but to the extent this is error, the error is harmless because the standard is the same: an ALJ must give "germane" reasons for rejecting the

testimony. Garrison v. Colvin, 759 F.3d 995, 1013–14 (9th Cir. 2014) (assigning error for not properly categorizing nurse practitioner as an "other source" under 20 C.F.R. § 404.1513(d)"); Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (an "ALJ may reject a third party's testimony upon giving a reason germane to that witness."); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) (finding a social worker is an "other source" and can be rejected for "germane" reasons).

The ALJ explained that neither plaintiff's mother nor Ms. Rittenhouse were acceptable medical sources and their statements regarding functional limitations were not consistent with the medical opinions of record or the objective findings, making them less persuasive. AR 26. These are appropriate considerations and germane reasons for giving less weight to the statements. See 20 C.F.R. § 404.1502(a) (defining who is an acceptable medical source); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence is a germane reason for discounting laywitness testimony). The ALJ conducted a detailed evaluation of the medical record, which he found did not support the third party statements. AR 20-25. Indeed, even Ms. Rittenhouse's own objective findings in the record indicated a normal mental status examination, and she concluded that plaintiff's depression was in partial remission. AR 809-10, 813, 1122. The record supports the ALJ's reasoning and there is no error here.

## VII. CONCLUSION

For all the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to file an 11-page reply brief (ECF No. 26) is GRANTED;

2. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED;

3. The Commissioner's cross-motion for summary judgment (ECF No. 21) is GRANTED; and

4. The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: August 25, 2020

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE